# STATE OF MICHIGAN

# COURT OF APPEALS

KRISTINA TAYLOR,

        Plaintiff-Appellant,

v

DELON PETER HANNI,

        Defendant-Appellee,

and

GRANGE INSURANCE COMPANY and
GRANGE INSURANCE COMPANY OF
MICHIGAN,

        Defendants.

UNPUBLISHED
August 30, 2018

No. 340553
Wayne Circuit Court
LC No. 16-006854-NF

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting summary disposition to defendant[1] in this action seeking no-fault benefits. We reverse and remand.

Plaintiff argues that the trial court erred when it concluded that plaintiff did not suffer a serious impairment of body function and thus granted defendant's motion for summary disposition. Plaintiff avers that there is a genuine issue of fact regarding whether the accident affected her general ability to lead her life, as she struggles to exercise, do housework, drive her son to school, and volunteer. We agree.

A trial court's ruling on a summary disposition motion is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Defendant brought his motion for summary disposition under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. When evaluating a motion for summary disposition under MCR

---

[1] Our reference to "defendant" in this opinion will refer to defendant Delon Peter Hanni.

2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5)." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016), quoting *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999) (quotation marks omitted). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

Subject to a number of statutory exceptions, Michigan's no-fault act, MCL 500.3101 *et seq*., abolished tort liability "arising from the ownership, maintenance, or use" of a motor vehicle. MCL 500.3135(3). One of those exceptions is found in MCL 500.3135(1), which provides that "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of a body function, or permanent serious disfigurement." The act defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).

The leading case interpreting the serious impairment of body function requirement is *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010). In *McCormick*, our Supreme Court set out a three-part test to determine if a plaintiff has sustained the requisite injury. According to the test, a plaintiff must suffer "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *Id*. at 195. The trial court granted summary disposition because it found that there was no genuine issue of material fact with respect to the third prong.

Whether an impairment affects the person's general ability to lead his or her normal life is a subjective inquiry as to whether the impairment has "an influence on the person's capacity to live in his or her normal manner of living." *Id*. at 202. Such an inquiry requires a comparison of the person's life before and after the incident in question. *Id*. The Court added that "general" modifies "ability" and not "affect" or "normal life." *Id*. Thus, MCL 500.3135(5) requires that "the person's ability to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. (emphasis omitted). Further, a plaintiff's ability to lead his or her normal life need not be destroyed, but only *affected*. *Id*. And there is no "express temporal requirement as to how long an impairment must last in order to have an effect on the person's general ability to live his or her normal life." *Id*. at 203. Even a very small portion of a person's normal life being affected may be enough—"there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*.

Here, there is a genuine issue of material fact as to whether plaintiff's general ability to lead her normal life has been affected by her impairments. Plaintiff's employment did not change after the accident—plaintiff was unemployed before, collecting supplemental security income, and this remains unchanged after the accident. However, her ability to engage in her other, normal activities has changed. Viewing the evidence in the light most favorable to her, plaintiff's regular activities before the accident included volunteering at her church, volunteering

at her son's school, and taking care of her son by spending time with him and driving him to school. Prior to the accident, plaintiff also exercised every other day. Following the accident, plaintiff still volunteers, but she claims that as a result of the accident, she does so not as frequently as before. And plaintiff still exercises, though she says she can only do so only once every two weeks. Plaintiff also testified that she cannot stand for long periods of time because she gets nauseous.

Although not required to, a fact-finder could find that this evidence shows that plaintiff's ability to lead her normal life has been affected by her most recent accident. While plaintiff apparently is able to do all the activities she did before the accident, there is evidence that she cannot engage in these activities as often as before. Thus, the evidence can be viewed as establishing that "at least some of plaintiff's capacity to live in [her prior] manner was affected." *Id.* at 218; see also *id.* at 203 ("[T]here is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected."). Accordingly, there is a genuine issue of fact as to whether plaintiff's general ability to lead her normal life was affected by her injuries, and we reverse the trial court's grant of summary disposition in favor of defendants.

Defendant argues that if this Court finds that there is a genuine issue of fact related to whether plaintiff's general ability to lead her normal life was affected, we nonetheless should affirm on the alternate ground that there is no evidence that plaintiff met the first requirement of a serious impairment of body function—that she had an objectively manifested impairment. We disagree.

Plaintiff presented to the hospital immediately after the accident complaining only of chest pain. Upon examination, the physicians determined that she had sustained no injuries. However, she later claimed to have developed headaches as well as neck and back pain. There is medical evidence corroborating these complaints. The August 14, 2014 MRI revealed a straightening of plaintiff's cervical lordosis. Plaintiff's physical therapist also diagnosed her with muscle spasms and tenderness in the cervical and lumbar spines. Further, the August 18, 2014 EMG revealed radiculopathy in C6-C7 and L5. While the independent medical examiner did not believe that plaintiff's complaints had an objective basis, other medical professionals did; when this evidence is viewed in a light most favorable to the nonmoving party, a question fact exists as to whether plaintiff suffered an objectively manifested impairment.

There is also a genuine issue of fact as to whether plaintiff's accident with defendant caused or aggravated plaintiff's impairments. Plaintiff had suffered a closed-head injury as a result of a 2003 car accident, which left her in a coma for multiple days. Plaintiff also suffered pelvic and renal injuries in April 2014 in a second car accident. Dr. Nilofer Nisar concluded that plaintiff's current neck and back pain was "aggravated by a recent motor vehicle accident," that is, the accident at issue in this case. Defendant's contentions regarding the cause of plaintiff's current impairments may be well founded and a jury would be permitted to reject plaintiff's and Dr. Nisar's testimonies on that point, but based on the evidence in the record, plaintiff has

established a genuine issue of fact regarding whether the accident involving defendant caused or aggravated her injuries and impairments.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel